**IT IS ORDERED as set forth below:**

**Date: June 4, 2019**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-50593-WLH |
| KIMBERLY J. KING, | CHAPTER 7 |
| Debtor. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ADVERSARY PROCEEDING NO. 18-5079-WLH |
| Plaintiff, | |
| v. | |
| KIMBERLY J. KING, | |
| Defendant. | |

1

## **ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**THIS MATTER** is the before the Court on Plaintiff's Motion to Enforce Settlement Agreement (the "Motion") (Doc. No. 39).

The Court has jurisdiction of this matter under 28 U.S.C. § 1334 and it is a core matter under 28 U.S.C. § 157(b)(2)(I) as it determines the dischargeability of the Debtor's debt to Plaintiff.

## **FACTS**

On April 16, 2018, American Title Insurance Company ("Plaintiff") filed a complaint to determine the dischargeability of a debt against the Debtor/Defendant Kimberly J. King ("Debtor"). The parties conducted discovery. The parties engaged in settlement discussions and do not dispute the email exchange set out in the Motion.

On August 30, 2018, Plaintiff's counsel sent Debtor's counsel an email with terms of a proposed settlement. Plaintiff offered to accept a reduced nondischargeable judgment in the amount of $250,000. The offer also required Debtor to list and sell certain pieces of real property to satisfy Plaintiff's judgment and provided, "A formal settlement will need to be drafted and executed to reflect the terms of the settlement. . . . The settlement agreement must be finalized no later than September 14, 2018." Doc. No. 39, Ex. A.

On September 14, 2018, Debtor sent her attorney an email stating:

> I appreciate FATIC for its willingness to reach a reasonable settlement. I accept all of the terms of this agreement because I think it is mutually beneficial. However, I need the support of FATIC in granting approval for a loan on 6428 Phillips Creek Drive to assist me with keeping the four properties financial health (i.e. mortgages, insurance, taxes), getting them sale-ready, and providing me with operating capital to be able to make this deal work. I found a lender who is willing to assist me with a asset enhancement loan of $62,500 which would pay off the first position lender and provide me with the capital to restore the properties so that we can sell them in 90 days or less. But, I would obviously need FATIC's approval and support to make this happen.

2

Doc. No. 39, Ex. A.  This email was forwarded by Debtor's counsel to Plaintiff's counsel on September 16, 2018.

On September 17, 2018, Plaintiff's counsel in turn replied to Debtor's counsel and expressed misgivings about a loan.  He stated: "let's talk about this today.  The idea of the 3rd party loan doesn't make sense to me, but I'm willing to listen and learn about it in more detail."  Doc. No. 41, Ex. 1, p. 6.  Plaintiff's counsel requested additional information about a pending loan and suggested the parties file a motion to extend the discovery period.  The parties continued to exchange emails about a proposed loan, but the parties never agreed on loan terms and never finalized a formal settlement agreement.

Plaintiff filed the Motion on March 15, 2019 seeking to enforce a purported settlement.  Plaintiff contends Debtor's response to her attorney on September 14, 2018 constituted an acceptance of its offer.  Debtor states her response to her attorney was a counteroffer and there is no legally enforceable settlement agreement.  For the reasons stated below, the Court agrees and finds Debtor did not unequivocally accept Plaintiff's offer and the parties failed to execute a required written agreement and, accordingly, there is no enforceable settlement agreement.

## **LAW**

Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence.  In considering the enforceability of an alleged settlement agreement, however, a trial court is limited to those terms upon which the parties themselves have mutually agreed.  Absent such mutual agreement, there is no enforceable contract between the parties.  It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties.  <u>Imerys Clays, Inc. v. Wash. Cnty. Bd. of Tax Assessors</u>, 287 Ga. App. 674, 675 (2007) (citations omitted).

3

"The construction of settlement contracts is governed by the state law applicable to contracts in general. . . . Here, Georgia law governs both whether there was a settlement agreement and the construction of any alleged settlement agreement." Hopson v. Hopson (In re Hopson), 216 B.R. 297, 301 (Bankr. N.D. Ga. 1997) (citations omitted); see also Hayes v. National Svc. Ind., 196 F.3d 1252, 1254 (11th Cir. 1999); Glazer v. J.C. Bradford & Co., 616 F.2d 167, 169 (5th Cir. 1980).  For an agreement to be binding, "it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned." Thomas v. Phillips, 240 Ga. App. 600, 602 (1999); Providers Benefit Life Ins. Co. v. Tidewater Group Inc. (In re Tidewater Group, Inc.), 8 B.R. 930, 931 (Bankr. N.D. Ga 1981).  Moreover, the agreement must be "definite, certain and unambiguous." Hopson, 216 B.R. at 297.  The party asserting the existence of a contract has the burden of proving its existence and its terms.  Torres v. Elkin, 317 Ga. App. 135 (2012).

"[I]t is well settled an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. . . . If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement it must follow that a valid and binding contract was not made." Thomas v. Phillips, 240 Ga. App. 600, 603 (1999) (internal citations omitted).  In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts consider the whole of the agreement and the surrounding circumstances, such as correspondence and discussions, and courts are free to consider such extrinsic evidence. Frickey v. Jones, 280 Ga. 573, 575 (2006) (citing Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn., 250 Ga. 391, 395 (1982)).

### I.    Debtor did not unequivocally accept Plaintiff's offer

On August 30, 2018, Plaintiff presented Debtor with proposed settlement terms including a reduced judgment amount of $250,000. However, Debtor did not unequivocally accept Plaintiff's offer. Debtor indicated to her attorney she would agree to payment of $250,000 but she conditioned acceptance on the occurrence of other events – her agreement was contingent on receiving Plaintiff's help in obtaining a loan.

On September 14, 2018, Debtor sent an email to her attorney stating: "I appreciate FATIC for its willingness to reach a reasonable settlement. I accept all of the terms of this agreement because I think it is mutually beneficial." Her very next word, though, was "However[.]" She stated: "However, I need the support of [Plaintiff] in granting approval for a loan" to help list and sell certain properties. She reiterated, "I would obviously need [Plaintiff's] approval and support to make this happen." The Court finds these additional terms constitute a condition to acceptance.

In Torres v. Elkin, 317 Ga. App. 135 (2012), the Georgia Court of Appeals explained settlement agreements must meet the same requirements of formation and enforceability as other contracts. Thus, an answer to an offer "will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer." Id. at 141. The offer must be accepted "unequivocally and without variance of any sort." Id. If a purported acceptance of the settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance. It is therefore necessary to determine whether a response is conditioned on assent to an additional term or whether it was mere precatory language seeking confirmation of an aspect of the agreement.

On the one hand, language is properly characterized as "precatory" when its "ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory

5

direction," and such language does not render a purported acceptance a counteroffer. Id. at 141 (citations omitted). For example, in Herring v. Dunning, 213 Ga. App. 695 (1994), the Georgia Court of Appeals found language was precatory when the offeree asked the offeror to "let me know" if other documents were necessary.

On the other hand, when an offeree's response makes acceptance conditional on the offeror's assent to an additional term, the response constitutes a counteroffer. Torres, 317 Ga. App. at 142. For example, in Frickey v. Jones, 280 Ga. 573 (2006), an insurer responded to an offer to settle claims related to a motor vehicle accident. It stated it was willing to tender payment, but it noted "payment is complicated by what appears to be a [hospital lien] as well as potential liens by your client's health carrier." Id. The court noted, a "mere request for confirmation that no liens exist" will not transform a purported acceptance into a counteroffer, but an added condition involving the "resolution of . . . actual and potential liens of the health care providers" will. Id. at 575-76 & n.2. Accordingly, the court found the response requiring an additional act (the resolution of all liens) constituted a counteroffer. Id. at 576; see also McReynolds v. Krebs, 290 Ga. 850, 854 (2012) (finding response proposing to resolve certain liens as part of the settlement constituted a counteroffer where the offer did not mention liens and did not contemplate any particular resolution of any liens as a condition of settlement); Torres, 317 Ga. App. 135 (finding response from insurance company stating: "I trust that your office will satisfy any liens arising out of this matter" added a new condition and therefore constituted a counteroffer).

Here, Debtor's September 14, 2018 email did not purport to accept Plaintiff's offer unequivocally and without variance of any sort. Plaintiff's offer did not mention a loan and did not contemplate assisting Debtor with obtaining a loan as a condition of settlement. Debtor's response did. It imposed an added condition and required resolution of an additional element –

6

obtaining a new loan. It is also important to note that Debtor's response went to the heart of Plaintiff's offer – how to sell the property at issue. This was not a peripheral concern but one central to the proposed settlement from Debtor's perspective. If she could not sell the property at an appropriate value, the judgment would not be paid. Plaintiff argues any such agreement to assist Debtor with a loan would be unenforceable, but this argument does not go to whether the parties *made* an agreement. Moreover, Plaintiff argues about the truth of facts not in evidence.

Further, Debtor's response was to her attorney, not to Plaintiff. This suggests her email was a counteroffer and that she intended her counsel to communicate her added condition to Plaintiff. Subsequent communications between the parties support the inference that Debtor did not intend her response to be an unequivocal acceptance of the settlement offer. Plaintiff responded to Debtor's counsel with reservations and would only confirm that it would review and consider Debtor's request regarding a new loan. For a contract to be enforceable, the parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain, or indefinite. The emails exchanged after September 14, 2018 show the parties continued to negotiate regarding a new loan. While Plaintiff contends it could not have supported Debtor's loan application, whether Debtor could obtain a loan was an open question and one that generated considerable discussion.

Plaintiff's counsel also suggested the parties file a motion to extend the discovery period in the pending adversary proceeding while the parties discussed the additional act necessary. If Debtor's September 14, 2018 response was an acceptance and did in fact resolve all of Plaintiff's claims, such a motion would not be necessary. The Court notes further that after the alleged settlement of September 14, 2018, Plaintiff noticed Debtor's deposition and the parties filed two motions to extend the time to file a pretrial order based in part on the need for the Debtor's

7

deposition and in part to "continue to attempt to work towards settlement of this matter." Doc. No. 28. Moreover, the Debtor filed a motion for summary judgment that the complaint was not timely (which was denied). None of these actions would have been necessary if the case were actually settled. The parties continued litigation and continued *trying* to settle, because no settlement was reached.

Finally, Plaintiff contends Debtor ratified an acceptance of Plaintiff's settlement offer in a joint proposed consolidated pretrial order, which was never filed with the Court, and through statements made by her counsel during a pretrial conference. The Court disagrees. At the pretrial hearing held on February 14, 2019, Debtor's counsel represented that the parties had been in settlement discussions and had an agreement in principle, the terms of which were not detailed. Debtor's counsel asked for mediation to attempt to complete the settlement. The actions of Debtor in seeking summary judgment against Plaintiff after the alleged settlement also negate any ratification.

The Court construes Debtor's response to her attorney about Plaintiff's settlement offer, asking for Plaintiff's support in obtaining a loan as part of the settlement, as a counteroffer rather than an unconditional and unequivocal acceptance. Accordingly, no binding settlement agreement was formed.

## II. The parties failed to execute a required written agreement

There is also evidence that a formal written agreement was required in this case and not executed. A writing could be required under three circumstances. First, "[i]f the existence or terms of a settlement agreement are disputed, then the agreement must be in writing." Hopson, 216 B.R. at 301. Second, if the contract is one identified in the statute of frauds, it must be in writing. O.C.G.A. § 13-5-30. Third, if the parties have conditioned the agreement on preparation

of a writing, then a writing is necessary to finalize the agreement. Vernon v. Assurance Forensic Acctng., LLC, 333 Ga. App. 377, 384-85 (2015). If a writing is required, "letters or documents prepared by attorneys which memorialize the terms of the agreement will suffice." Hopson, 216 B.R. at 301.

Here, the parties disagree on whether an agreement was reached, so the agreement must be memorialized in writing to be enforceable. "While an agreement may be oral, if the parties disagree on whether an agreement was reached, the agreement must be memorialized in a writing to be enforceable, and the absence of a writing prevents enforcement." Imerys Clays, Inc. v. Wash. Cnty. Bd. of Tax Assessors, 287 Ga. App. 674, 675-76 (2007) (citing Moreno v. Strickland, 255 Ga. App. 850, 852 (2002)). If the parties agree a settlement was reached but disagree as to its terms, "the proponents of the settlement[ ] must establish its existence in writing." Id. (citing Tekin v. Whiddon, 233 Ga. App. 645, 647 (1998)).

Plaintiff points to the emails as a memorialization of the disputed terms of the purported settlement. However, the emails do not consist of a formal written agreement signed by the parties, and the emails do not establish with certainty the existence of and terms of the purported settlement agreement. Rather, the email exchanges between the parties demonstrate only the parties' ongoing negotiations.

Further, the parties conditioned settlement on having a formal written agreement, so a writing was necessary. A formal, written agreement may be a condition precedent to the formation of a binding contract when the parties so intend. Doss & Assoc. v. First American Title Ins. Co., 325 Ga. App. 448, 452 (2013). Circumstances indicating the parties intended to prepare a subsequent writing is strong evidence that they did not intend to be bound by a preliminary agreement. Turner Broadcasting System v. McDavid, 303 Ga. App. 593, 601 (2010).

9

There is evidence the parties intended the execution of the formal settlement agreement to be a condition precedent. One of the conditions of Plaintiff's offer was a definitive written agreement by a date certain. It stated, "A formal settlement agreement will need to be drafted and executed to reflect the terms of settlement. . . . The settlement agreement must be finalized no later than September 14, 2018." Plaintiff clearly contemplated the future execution of a written agreement. The offer provided a writing was mandatory – it stated a writing *must* be finalized by a date certain. It left the parties no discretion and suggests a failure to finalize the writing by September 14, 2018 would have been an event of default. It therefore appears execution of the settlement agreement was not merely intended to be a memorialization of that agreement; rather, it was an essential component of the settlement. Debtor sent her email to her attorney on September 14, 2018 and her response was not forwarded to Plaintiff's counsel until September 16, 2018, after the deadline had passed. Debtor's response, therefore, could not have constituted a timely acceptance. Even if Plaintiff was agreeable to a later response, the fact remains *no* written agreement was ever executed.

The Court finds execution of a settlement agreement was a precondition of the agreement being final. The parties contemplated a written agreement, and execution of the agreement was necessary. Because the parties failed to complete a formal settlement agreement by September 14, 2018 or any later date agreeable to the parties, the parties were not bound by Plaintiff's preliminary agreement.

## **CONCLUSION**

The email exchange between the parties does not demonstrate a complete meeting of the minds and does not substantiate that an agreement to settle this adversary proceeding was reached. Debtor did not unequivocally accept the material terms of Plaintiff's settlement offer and, thus,

there was no settlement. Further, the parties failed to execute a necessary written agreement. Plaintiff, as the party asserting the existence of a contract, has the burden of proving its existence and its terms and it has failed to do so. Accordingly,

**IT IS ORDERED** the Motion is **DENIED**.

**IT IS FURTHER ORDERED** the parties are directed to file a revised proposed consolidated pretrial order no later than **30 days** after the entry of this order, which has proper margins and makes appropriate changes in accordance with this order.

**IT IS FURTHER ORDERED** the Court will hold a status conference on **July 25, 2019** at 11:00 a.m. in Courtroom 1403, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia.

**END OF DOCUMENT.**

**Distribution List**

First American Title Insurance Company
c/o John Rezac
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

John Rezac
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

Albert A. Mitchell
3079 Campbellton Road, Suite 203
Atlanta, GA 30311

Kimberly J. King
P.O. Box 54263
Atlanta, GA 30308